Argued and submitted February 5, 2018, reversed and remanded
October 30, 2019

In the Matter of the Compensation of
Randy G. Simi, Claimant.

Randy G. SIMI,
*Petitioner,*

*v.*

LTI INC. - LYNDEN INC.,
*Respondent.*

Workers' Compensation Board
1504870; A164429

453 P3d 587

Claimant seeks review of an order of the Workers' Compensation Board holding that his occupational disease claim for a shoulder condition under ORS 656.802(1)(a)(C) (describing an occupational disease arising out of "any series of traumatic events or occurrences"), based on the cumulative effect of multiple work injuries, is not compensable. Claimant contends that the board erred in determining that claimant was required to establish that the condition was caused by claimant's "general work activities." *Held*: Work-related injuries are employment conditions to be considered in determining the compensability of an occupational disease, and the board erred in imposing the additional requirement that claimant establish that the claimed occupational disease was caused by "general work activities."

Reversed and remanded.

Ronald A. Fontana argued the cause for petitioner. Also on the brief was Ronald A. Fontana, PC.

Rebecca A. Watkins argued the cause for respondent. Also on the brief was Sather, Byerly & Holloway, LLP.

Before Hadlock, Presiding Judge, and DeHoog, Judge, and Aoyagi, Judge.

HADLOCK, P. J.

Reversed and remanded.

## HADLOCK, P. J.

Claimant, who, over the years, has suffered multiple work-related injuries to his right shoulder, filed an occupational disease claim under ORS 656.802(1)(a)(C),[1] seeking compensation for treatment that he contends was necessitated by the cumulative effects of his work-related injuries. He seeks judicial review of an order of the Workers' Compensation Board upholding employer's denial of the claim based on the board's determination that it was not persuaded that claimant's "general work activities" had contributed to claimant's condition. Because the board erred in concluding that the claim could be compensable only by proof of a contribution from "general work activities," we reverse the board's order and remand for reconsideration.

Claimant worked for many years as a truck driver. In 2001 and 2004, while working for different employers, claimant suffered work-related injuries to his shoulder, including a right shoulder partial labral tear and partial rotator cuff tear. Claimant worked for employer as a milk truck driver from 2005 through May 2014. His work required him to drive a semi truck, carry heavy hoses (including while climbing ladders), lift, carry, install and remove heavy tire chains, and scrub and rinse the tops of dairy tanks.

Claimant experienced three shoulder injuries while working for employer. In 2010, he slipped and fell, injuring his shoulder, and employer accepted a claim for a right rotator cuff tear, for which claimant had surgery. In 2013, claimant slipped on a ladder and briefly hung by his arms. Claimant submitted a claim, which employer denied as untimely. In February 2014, claimant experienced increased shoulder pain and weakness when, over three snowy days, he repeatedly installed and removed heavy tire chains. When the pain became intolerable six weeks later, claimant sought medical treatment and submitted an injury claim, which employer denied.

---

[1] ORS 656.802(1)(a) defines an occupational disease as "any disease or infection arising out of and in the course of employment *** including:

"*****

"(C) Any series of traumatic events or occurrences which requires medical services or results in physical disability or death."

In 2015, claimant experienced increased shoulder pain and sought treatment from Dr. Butters, an orthopedic surgeon, who diagnosed a recurrent right rotator cuff tear and biceps tendon dislocation, and performed arthroscopic surgery. Butters opined that claimant's occupational exposure was the major contributing cause of his right shoulder tear, biceps tendon dislocation, and need for surgery. Claimant filed the occupational disease claim at issue here, seeking compensation for his right shoulder conditions.

Employer had claimant examined by Dr. Swanson, who opined that "there is no valid evidence that any of the current diagnoses in [claimant's] right shoulder are due to work." Based on Swanson's opinion, employer denied the claim.

In an apparent shift from his earlier opinion, Butters expressed in a concurrence report that claimant's occupational exposures were not the major contributing cause of his shoulder conditions and need for treatment. Butters wrote that "injury to the right shoulder if present would be the cause of the recurrent tear *** not occupational disease." Butters said, "this person's job every day to me doesn't qualify it to be an occupational disease for his shoulder but injury does."

Butters later explained more fully that, although he did not think that claimant's daily work activities would have caused the condition, claimant's *injuries* at work were the major contributing cause of his current condition requiring surgery. Butters testified that the 2013 injury was the major contributing cause of the worsening of claimant's previous pathology and need for surgical repair, but that each of claimant's work injuries, as well as his tire-chaining activities in February 2014, contributed to the shoulder pathology and the need for treatment. Butters opined: "In this specific case with what he does, with his injuries, I tend to think that the injury or series of injuries is the major contributing cause."

An administrative law judge and the board upheld employer's denial of the claim, citing board precedent that a condition that arises suddenly as a result of a distinct injury is not compensable as an occupational disease, unless

"general work activities" have contributed to the onset or worsening of the claimed condition. The board, assuming for the sake of discussion that claimant's claim should be analyzed as an occupational disease rather than an injury, stated that, "to establish the compensability of an occupational disease, the record must demonstrate that general work activities contributed to the condition." It appears that the board regards "general work activities" to be the overall activities in which the worker generally engages, as distinct from specific incidents causing injury. Claimant's condition, the board found, arose suddenly over a discrete period of time, and not as a result of a contribution from general work activities. In determining that the condition was not compensable as an occupational disease, the board explained, "We find Dr. Butters' opinion that several discrete work-related injuries contributed to the right shoulder condition to be insufficient to demonstrate that claimant's 'general work activities' contributed to those conditions."[2]

On judicial review, claimant contends that the board erred in concluding that, for an occupational disease when the record shows that a claimant's condition was the result of a series of work injuries, the record must nonetheless also show that the claimant's "general work activities" contributed to the condition. Claimant presents that argument in association with his first and second assignments of error. For the reasons that follow, we agree with claimant that the board erred.

ORS 656.802 sets out the requirements for an occupational disease claim and provides, in part:

"(1)(a)  As used in this chapter, 'occupational disease' means any disease or infection arising out of and in the course of employment caused by substances or activities to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein, and which requires medical services or results in disability or death, including:

---

[2] One board member dissented. Citing *Kepford v. Weyerhaeuser Co.*, 77 Or App 363, 713 P2d 625, *rev den*, 300 Or 722 (1986), Board Member Weddell expressed the view that, because each work injury occurred while claimant was performing work activities, the injuries are part of claimant's overall employment conditions to be considered in determining the compensability of the claim.

"*****

"(C)  Any series of traumatic events or occurrences which requires medical services or results in physical disability or death.

"(2)(a)  *The worker must prove that employment conditions were the major contributing cause of the disease*."

(Emphasis added.) *See also* ORS 656.266(1) (stating that the burden to prove that an occupational disease is compensable is upon the worker). In claimant's view, under ORS 656.802(1)(a)(C) and (2)(a), a claimant can establish that "employment conditions" have caused a condition requiring medical treatment by showing that the condition has been caused or worsened by a series of work-related injuries or occurrences, such as those experienced by claimant, without also showing a separate contribution from "general work activities."

Employer responds that a series of discrete injuries does not constitute an occupational disease. Employer emphasizes the distinct nature of injuries and diseases in both the statutes and the case law. *See, e.g.*, *Mathel v. Josephine County*, 319 Or 235, 241-42, 875 P2d 455 (1994) (stating general rule that a *compensable injury* under ORS 656.005(7)(a) occurs with a sudden unexpected event, and an *occupational disease* under ORS 656.802 refers to the ongoing or gradual development of a condition of the body); *Dynea USA, Inc. v. Fairbanks*, 241 Or App 311, 317, 250 P3d 389 (2011) (same); *but see, e.g.*, ORS 656.802(1)(a)(B) (providing that an occupational disease includes "any mental disorder, whether sudden or gradual in onset"). In employer's view, a "series of traumatic events or occurrences" that can give rise to an occupational disease under ORS 656.802 (1)(a)(C) is meant to address only occupational diseases that are brought on gradually by physical overuse or repetitive motion and not to encompass a series of injuries.

There are correct aspects to each party's contentions. Employer is correct that the legislative history of ORS 656.802 shows that subparagraph (1)(a)(C) was intended to clarify that conditions brought on by microtraumas or overuse are to be evaluated as occupational diseases, not injuries, and are subject to the higher, major contributing cause,

standard of proof applicable to occupational diseases generally. *See Aetna Casualty Co. v. Aschbacher*, 107 Or App 494, 502, 812 P2d 844, *rev den*, 312 Or 150 (1991) ("It appears from the legislative history that the purpose of the language 'any series of traumatic events or occurrences' was to make it clear that workers' compensation claims involving physical overuse of a body part are to be treated as occupational diseases rather than as injuries.").

But claimant is correct that neither the statute's text nor the legislative history shows that ORS 656.802 (1)(a)(C) was intended to encompass *only* claims arising out of microtraumas or overuse. The statute's text refers to "a series of traumatic events or occurrences," which is broad enough to encompass a series of injuries. As employer acknowledges, although a series of injuries in and of itself is not an occupational disease, an occupational disease can be established by medical evidence that discrete, work-related injuries have caused a separate condition. *See, e.g.*, *Kepford v. Weyerhaeuser Co.*, 77 Or App 363, 713 P2d 625, *rev den*, 300 Or 722 (1986) (the cumulative effect of injuries and conditions of employment can constitute an occupational disease).

The question here is whether, in order to establish the compensability of an occupational disease based on a "series of traumatic events or occurrences," the worker must show, as the board required, a contribution from "general work activities." ORS 656.802 describes types of occupational diseases: (1) "[a]ny disease or infection" brought on by one of the mechanisms described in ORS 656.802(1)(a)(A); (2) certain mental disorders, whether sudden or gradual in onset, ORS 656.802(1)(a)(B); or (3) "[a]ny series of traumatic events or occurrences which requires medical services or results in physical disability or death[,]" ORS 656.802(1)(a)(C). ORS 656.802(2)(a) establishes "major contributing cause" as the standard of proof for all occupational disease claims, requiring proof that "employment conditions"—as distinct from other causes—were the disease's major contributing cause. The statute refers to "employment conditions," not to "general work activities." Thus, "general work activities" is not a statutory term; rather, it is a standard that the board itself has long chosen to apply in determining whether a condition

is compensable as an occupational disease or was brought on by a specific event. *See Linda Berry*, 54 Van Natta 396 (2002) (an occupational disease is not established by medical evidence that the major contributing cause of the condition requiring treatment was an injury and not the claimant's general work activities). Applying that standard in this case, the board required claimant to show that his general work activities contributed to his condition to establish an occupational disease under ORS 656.802(1)(a)(C).

We conclude that in this case, the board erred in determining that claimant could establish an occupational disease only through proof that his general work activities contributed to his condition. Work-related injuries are themselves "employment conditions" under ORS 656.802(2)(a) that may establish causation. *Hunter v. SAIF Corp.*, 246 Or App 755, 760, 268 P3d 660 (2011) (stating that "[p]rior work injuries may be considered as part of the overall employment conditions" when evaluating the major contributing cause of an occupational disease); *see also Aschbacher*, 107 Or App at 504 (ORS 656.802(1)(a)(C) is "limited to occupational disease claims based on a series of injuries"). If the legislature had intended to also require proof of a worker's general work activities when a disease is brought on by a series of traumatic events or occurrences, it would have said so. Thus, we conclude that if the medical evidence persuades the board that a disease was caused by the cumulative effect of a series of work-related injuries, then the disease itself is also work-related and compensable. *Hunter*, 246 Or App at 766. There is no need, in addition, to show that the disease was caused by the worker's "general work activities."

Our conclusion is consistent with ORS 656.802 (1)(a)(C) (an occupational disease includes "[a]ny series of traumatic events or occurrences which requires medical services or results in physical disability or death"), and with the case law. It is true that, as employer emphasizes, injuries and occupational diseases are generally distinguished based on whether the identified condition developed suddenly as a result of a discrete event or gradually over time. *See Smirnoff v. SAIF*, 188 Or App 438, 449, 72 P3d 118 (2003) ("In determining whether [a] condition should

be characterized as an injury or an occupational disease, the inquiry is whether the *condition* developed gradually or as the result of a discrete event." (Emphasis in original.)). However, it is important in this context, as others, to distinguish between the condition and its symptoms. Sometimes, "[e]ven where a claimant's *symptoms* arise within a discrete period, the medical evidence may support a finding that the *condition* which caused those symptoms did not necessarily develop in that same period." *Miller v. SAIF*, 293 Or App 74, 81, 425 P3d 766 (2018) (emphases in original); *see id.* (board could infer that the claimant's rotator-cuff condition became symptomatic during a discrete period associated with a particular event, but that his condition developed through occupational overuse over "many years"). As we said in *Smirnoff*, the proper inquiry "is whether the condition itself, not its symptoms, occurred gradually, rather than suddenly." 188 Or App at 449.

In this case, it is not disputed that claimant experienced several work-related injuries in his employment as a truck driver, including multiple injuries with employer; those injuries are considered to have arisen out of employment conditions. The record includes medical evidence from which a factfinder could find that claimant's cumulative injuries caused a separate medical condition requiring surgery. But, because it upheld employer's denial based on a determination that claimant had failed to prove a contribution from general work activities, the board did not make findings directed at determining whether claimant's condition requiring surgery was a condition separate from his discrete injuries—a condition that developed gradually as the result of the cumulative effect of the work-related injuries. We therefore reverse and remand the board's order for reconsideration.[3]

---

[3] In discussing Butters's statements, the board ruled that his discussion of the February 2014 tire-chaining episode did not "persuasively demonstrate that the work activity contributed to the condition rather than its symptoms." Claimant challenges that aspect of the board's decision in his third assignment of error. Because our remand requires the board to reconsider whether claimant's condition requiring surgery was a cumulative condition separate from each of his discrete injuries, we do not address the "condition rather than *** symptoms" issue, as the board's analysis of that issue may change when it applies the holding of this opinion on remand.

Reversed and remanded.

---

In a cross-assignment of error, employer contends that the board erred by "assuming" for the sake of analysis, that claimant's claimed condition should be evaluated as an occupational disease rather than an injury. Rather, employer asserts, the board "should have concluded that the only support for the claimed conditions was as an injury." Employer will have an opportunity to address that argument to the board on remand, so we do not address it further here.